*Orphans' Court, Dauphin County, October 20th,* 1862.

IN THE MATTER OF HORTER'S ESTATE.

Where a testatrix gave by her will certain specific legacies to some of her
    collateral kindred, and directed that the residue of her estate, after paying
    the legacies aforesaid, "and other legal demands," should be equally di-
    vided among her brothers and sisters, naming them, the collateral inheri-
    tance tax due on the specific legacies must be deducted from those legacies
    by the executor, and not from the general estate.

BY THE COURT.—On the 4th day of January, 1856, Mary
Horter executed her will in due form of law, which was regu-

[In the Matter of Horter's Estate.]

·larly admitted to probate on the 28th of January, 1861, whereby she bequeathed divers sums of money and certain personal chattels to several of her collateral kindred by name, and afterwards directed that the residue of her estate, after paying the legacies aforesaid, "*and other legal demands*," shall be equally divided between her brothers and sisters, naming them respectively. The question submitted to the court is, whether the collateral inheritance tax shall be paid out of the estate before the residuary clause can take effect, or out of the previous named legacies in proportion to their amount and value, and only the residue be deducted from the share of the residuary legatees? By the first section of the act of the 7th of April, 1826, the estates of decedents were subjected to the payment of the collateral inheritance tax, and the executors or administrators were required to pay it out of the estate, and held responsible until it was discharged. But by the sixty-second section of the act of February 24th, 1834, the legal representative was required to deduct the tax from every legacy before paying it over, whether it was pecuniary or specific, and in the latter case the value was to be ascertained by appraisement. The devisee or heir-at-law of land was required in like manner to discharge the tax before holding the estate on which it was made a lien, and by the sixty-ninth section, it is provided that where the tax has been deducted from the legacy and the legatee required to refund on account of after-discovered debts, the executor or administrator shall refund the amount, and is authorized to receive the same from the county treasury if it has been paid over. All of this proves that it was the policy of the legislature to throw the tax specifically on the legacies and not charge it on the general estate, which in many cases would be highly just and convenient, as the estate might go to lineal descendants, yet a large amount in the shape of legacies be given to collateral kindred or strangers. The object was to tax legacies, or conveyances to take effect after death, when given out of the right line of descent, but leave the lineal kindred untaxed, yet if thrown on the estate instead of the legacies the lineal heirs would have to bear the burden of the tax.

There is no doubt of a testator possessing the power to relieve the legatees from the payment of the tax by throwing it on the residue of the estate where the same is sufficient to make payment, but it must be done by clear and express words or necessary implication. The burden which the law imposes on the legacies cannot be shifted by loose, equivocal or general expressions. The only words used in this will which could be so construed are those already quoted, "*other legal demands*," and if there was nothing else for these words to operate upon we should construe them as applying to this tax, but there is abundance of other matters to which they may refer. In the outset the testator orders her just

[In the Matter of Miller's Estate.]

debts to be paid, and she may refer to that or to the expense of settling the estate. In one clause of her will she directs a head and foot stone to be placed at her grave, and the lot inclosed by an iron railing, also that the remains of her deceased husband, father and mother shall be removed to the same place, and suitable stones placed at their graves, all of which expense would create a " *legal demand* " on her estate.

The reference may rather be to that than to the collateral inheritance tax, which we can scarcely suppose entered into her mind, and as there are ample matters referred to in the will to which these words may apply, I do not consider that they should be so construed as to change the law, which threw the tax on the legatees, and impose the whole burden on the estate. I am, therefore, of the opinion, that the legacies, whether of a numerical sum or specific articles, given to Mr. Adams, the executor, and to Rebecca Springer and Mary Horter Springer, must pay the tax imposed on them by law, and the residue of the tax alone be paid by the other legatees. Had the law remained as under the act of 1826, our decision would have been different. That act threw the tax on the estate, to be paid by the executor or administrator. The latter law imposed the burden on the respective legacies, and the legal representative is only authorized to retain it from them and not from the estate. This is not changed by the direction in the will for the reasons already given. The distribution account must be corrected accordingly.